IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SERGEI IZBITSKI,

      Petitioner,

v.                                                    1:25-cv-00778-JB-JMR

RAY CARNES, *Warden, Torrance County Detention Facility*; MARISSA A. FLORES, *Director of El Paso Field Office*; *U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security*; PAM BONDI, *Attorney General of the United States, in their official capacities*,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner Sergei Izbitski's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, filed on August 14, 2025, and his accompanying Memorandum of Law in Support of Petition for Habeas Corpus Relief. Doc. 1. On December 22, 2025, the federal Respondents filed a response. Doc. 30. On December 23, 2025, Petitioner filed a reply. Doc. 31. Warden Ray Carnes was served (Doc. 25), but he did not file a response brief.[1] United States District Judge James O. Browning referred this case to me pursuant 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 7. Having considered the parties' submissions and the relevant law, I conclude that Petitioner is entitled to relief. Therefore, I recommend that the Court GRANT the petition because Mr. Izbitski is being

---

[1] However, as the federal Respondents note, "all arguments made on behalf of the remaining Respondents apply equally to Warden Carnes." Doc. 30 at 1 n.1.

indefinitely detained without a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

I. **Background**

Mr. Izbitski is stateless. The Respondents do not dispute this fact. He was born in the Kazakh Soviet Socialist Republic on November 19, 1979. Doc. 1 at 2 ¶ 1. He left the country in September 1991, shortly before it declared independence becoming the present-day Republic of Kazakhstan. *Id.* Mr. Izbitski is not, and has never been, a citizen of the Republic of Kazakhstan. Doc. 1 at 11–12.

Mr. Izbitski has resided in the United States since 1991. Doc. 1 at 1 ¶ 1. He owns a home and his own business. *Id.* at 3 ¶ 5. He has no criminal record. *Id.* However, when he entered the country in 1991, he entered "unlawfully and without inspection." Doc. 30 at 1. On March 27, 2006, he was ordered removed. *Id.* (citing Doc. 31-1, an unsigned "Order of Supervision" from the Department of Homeland Security). But he was not removed at that time. Instead, he was placed on an Order of Supervision. Doc. 1 at 2 ¶ 1.

On June 9, 2025—nearly seven months ago—the federal government unexpectedly arrested Mr. Izbitski. Doc. 1 at 2 ¶ 2. He has been detained ever since. He is currently incarcerated at the Torrance County Detention Facility in Estancia, New Mexico. *Id.* at 1 ¶ 1.

II. **The Parties' Arguments**

Mr. Izbitski seeks his immediate release. Doc. 1 at 9. He argues that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution; 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act ("INA"); and 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act ("APA"). Doc. 1 at 7–8. He claims that

2

he is being detained "with no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 7 ¶ 23.

Mr. Izbitski explains that the Department of Homeland Security "has not been able to remove him from the United States" because he is not a citizen of Kazakhstan and Kazakhstan is "unwilling to accept his return." Doc. 1-1 at 5–6. He argues that these facts have not changed. Thus, "there is no end [in] sight for his detention." *Id.*

In response, the federal Respondents argue that Mr. Izbitski is "lawfully detained pursuant to a removal order and his removal is reasonably foreseeable." Doc. 30 at 1 (citing 8 U.S.C. § 1231(a)). They further request that the Court impose an administrative exhaustion requirement on Mr. Izbitski. Doc. 30 at 7–8.

The warden failed to respond to the Court's two Orders to Show Cause as to why the petition should not be granted. Docs. 8, 28.

I did not hold a hearing in this case because neither party requested one and there are no disputed material facts.

**III.    Discussion**

I recommend that the Court find that Mr. Izbitski's Fifth Amendment rights are being violated by his indefinite detention. *Infra* § III(A). I further recommend that the Court waive the exhaustion requirement for Mr. Izbitski's indefinite detention claim. *Infra* § III(B). I also recommend that the Court decline to address his other requests for relief. *Infra* § III(C).

Based on these findings, I recommend that the Court order Mr. Izbitski's immediate release and restore his Order of Supervision under the same terms as were in place before June 9, 2025. *Infra* § IV.

### A. I recommend that the Court find that Mr. Izbitski is entitled to habeas relief because his Fifth Amendment rights are being violated.

This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."[2] 8 U.S.C. § 1231(a)(1)(A). This period of time is called the "removal period." *Id.* The removal period begins once the removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed on appeal or the time to file an appeal has expired, 8 U.S.C. § 1101(a)(47)(B). In certain enumerated circumstances, an alien "may be detained beyond the removal period." § 1231(a)(6); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (discussing the circumstances where an alien may remain "detained after 90 days have passed").

---

[2] The Court recognizes that some consider the term "alien" to be pejorative. However, the term "alien" is used in the relevant statutory framework. The Court uses this word to avoid legal imprecision or ambiguity that may be caused by using an alternative word.

4

However, in *Zadvydas*, the Supreme Court explained that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Under *Zadvydas*, six months of post-removal order detention is "presumptively reasonable." *Id.* at 701. After this point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every alien must be released if not removed after six months in detention. *Id.* Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

To show that a petitioner has a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," they are not required to "show the absence of *any* prospect of removal." *Id.* at 702. Instead, they are only required to provide a "good reason to believe" that removal is unlikely—"[t]his distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage. *Aguilar v. Noem*, No. 25-CV-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) (citation omitted). Courts have found that such a "good reason" exists when the presumptively reasonable six months of detention have passed, and other circumstances also indicate that there is no significant likelihood of removal. *See, e.g.*, *Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (Petitioner detained for roughly seven months and

"ICE made no efforts to remove [her] beyond soliciting acceptances" from three countries on just one day); *Salazar-Martinez v. Lyons*, No. 2:25-CV-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (Petitioner detained for seven months and "ICE has not 'identif[ied] any country that has agreed to accept her.'"); *Zhuzhiashvili v. Carter*, No. 25-3189-JWL, 2025 WL 2837716, at *2 (D. Kan. Oct. 7, 2025) (Petitioner detained for seven months and "officials have made no progress towards his removal or even identified a possible destination"); *Vargas v. Noem*, No. 25-3155-JWL, 2025 WL 2770679, at *2 (D. Kan. Sept. 29, 2025) (Petitioner detained for nine months and "officials have not been able even to name for him any country to which an inquiry has been made or to which petitioner might possibly be removed"). Notably, "[t]he mere fact that the requisite six months have now elapsed is not sufficient to meet [Petitioner's] burden." *Reyna-Salgado v. Noem*, No. 25-3172-JWL, 2025 WL 3209007, at *2 (D. Kan. Oct. 3, 2025) (citing *Zadvydas*, 533 U.S. at 701).

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden turns to the respondents to rebut the petitioner. *Zadvydas*, 533 U.S. at 701. The respondents must provide "evidence" in rebuttal. *See id.* "Unsubstantiated assertions do not meet this burden." *Aguilar*, 2025 WL 3514282, at *6 (citing *Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) (collecting cases)). "[M]ere intent to find a third country is too speculative to permit indefinite detention or to overcome [petitioner's] showing. *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025), *report and recommendation adopted*, No. CV 25-1067-J, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025). "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, No.

6

9:25-CV-216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (quotation omitted). Further, the respondents' allegations, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

In this case, Mr. Izbitski is entitled to habeas relief because he is being detained with no likelihood of removal in the reasonably foreseeable future.

Mr. Izbitski has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Mr. Izbitski has been detained for almost seven months, and there are no signs that he is any closer to removal than he was nearly twenty years ago in 2006. Mr. Izbitski's country—the Kazakh Soviet Socialist Republic—no longer exists. The modern-day Republic of Kazakhstan has unambiguously stated that Mr. Izbitski "is not a citizen." Doc. 1 at 11 (translating Doc. 1 at 12, a letter from the Consulate General of the Republic of Kazakhstan). This creates obvious barriers to obtaining travel documents for Mr. Izbitski and finding a country that is willing to accept him. Mr. Izbitski argues that the Republic of Kazakhstan will not accept him because he is not a citizen. Doc. 1-1 at 9. In the nearly seven months that Mr. Izbitski has been detained, the government has made no effort to remove him other than reaching out to Kazakhstan to "request . . . travel documents." Doc. 30 at 8 ¶ 19. The Respondents have not identified any possible alternative destination for which Mr. Izbitski could be deported. Under these circumstances, Mr. Izbitski has a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

The federal Respondents have not even attempted to meet their burden. In immigration-based habeas cases in this District, the federal Respondents will often come forward with an affidavit from a relevant government official. *See, e.g.*, *Diaz-Cruz v. Dedos*, Doc. 14-1, 1:25-cv-

7

01117-MLG-JMR (filed Dec. 8, 2025) (Declaration from DHS Acting Assistant Field Office Director); *Lorenzo v. Anda-Ybarra*, Doc. 9-4, 2:25-cv-00923-KWR-GJF (filed Nov. 14, 2025) (Declaration from DHS Supervisory Detention and Deportation Officer); *Jimenez Chacon v. Lyons*, Doc. 18-1, 2:25-cv-00977-DHU-KBM (filed Oct. 29, 2025) (Declaration from DHS Assistant Field Officer Director); *Salazar-Martinez v. Lyons*, Doc. 17-1, 2:25-cv-00961-KG-KBM (filed Oct. 28, 2025) (Declaration from DHS Assistant Field Officer Director). The Respondents here have not. *Zadvydas* unambiguously states that, after six-months of detention, the Government must provide "*evidence* sufficient to rebut" Petitioner's claims. *Zadvydas*, 533 U.S. at 701 (emphasis added). The only evidence that Petitioner provided in this case is an unsigned Department of Homeland Security Order of Supervision, dated February 26, 2015. Doc. 30-1. This document does not rebut Petitioner's assertions in any way. It only demonstrates that he has spent many years, if not decades, on release subject to conditions. The Respondents state in their briefing that they have requested "travel documents from Kazakhstan" for Mr. Izbitski, and that that request "remains pending." But they have not supplied anyone who can testify to that assertion or explain to the Court when or how the request was made. Their briefing does not even make clear whether they hope to remove him to the Republic of Kazakhstan. Despite his prolonged detention and given Mr. Izbitski's stateless status, Respondents also have not attempted to identify a single other country to which they could plan to remove him. The Government has not shown any real evidence to show that there is a "significant likelihood" that Mr. Izbitski will be removed "in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

Accordingly, Mr. Izbitski's Due Process rights have been violated by his indefinite detention, and his habeas petition should be granted. *See also Krechmar v. Parra*, No. 2:25-CV-

01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025) (similarly granting § 2241 petition when government failed to rebut stateless petitioner's assertion that he is being indefinitely detained).

When arguing that he is being indefinitely detained, Mr. Izbitski also argues that his removal period "began on April 25, 2006, when the appeal period for the immigration judge's decision expired without either party filing an appeal." Doc. 1-1 at 9 (citing 8 U.S.C. § 1231(a)(1)(B)(i) and 8 C.F.R. § 1241.1(c)). Thus, because his "removal period expired 20 years ago . . . detention for even one day is unlawful." Doc. 31 at 1. *But see Johnson*, 594 U.S. at 528–29 (2021) (explaining the circumstances where an alien may remain "detained after 90 days have passed"). However, because there is no reasonably foreseeable likelihood of Mr. Izbitski's removal, it is not necessary for the Court to decide when Mr. Izbtiski's removal period began or whether detention at all was unlawful.

**B. I recommend that the Court waive the requirement that Mr. Izbitski exhaust his administrative remedies.**

The federal Respondents also argue that "Petitioner's request for a writ of habeas corpus should not be granted at this time as Petitioner has not exhausted his administrative remedies." Doc. 30 at 7 ¶ 16 (referencing 8 C.F.R. § 241.13). I recommend that the Court waive the exhaustion requirement for Mr. Izbitski.

Section 2241 does not contain an exhaustion requirement. *See, e.g.*, *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) (noting the same). Instead, courts, in their discretion, will often require habeas petitioners to exhaust their claims. *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022) ("But where Congress had not clearly required exhaustion, sound judicial discretion governs.") (citation omitted). "This exhaustion requirement is not in the text of § 2241; it is a prudential requirement imposed by the courts, and may therefore be waived. *Tyson*

*v. Jeffers*, 115 F. App'x 34, 39 (10th Cir. 2004). "Courts are thus permitted to overlook failures to exhaust and address the merits of a § 2241 claim." *Id.*; *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("[T]he exhaustion deficiencies we have noted in other respects do not affect habeas jurisdiction over [*Zadvydas*] claims.").

Nonetheless, habeas petitioners are usually required to exhaust. *See, e.g.*, *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief . . . .") (citing *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam)). The underlying justification for requiring exhaustion is relevant here. In *Williams*, the Tenth Circuit required a § 2241 petitioner to exhaust his administrative remedies when he asserted that he had already completed his federal prison sentence. *Williams*, 792 F.2d at 987. The *Williams* court required exhaustion because, per statute, the Bureau of Prisons was responsible for "the computation of the service of a sentence." *Id.*; s*ee also Smoake v. Willingham*, 359 F.2d 386, 388 (10th Cir. 1966) (applying the same reasoning). Additionally, it explained that the "agency is in a superior position to investigate the facts, judicial intervention is usually deferred until administrative remedies have been exhausted." *Williams*, 792 F.2d at 987. In *Tyson*, the Tenth Circuit also imposed an exhaustion requirement when a § 2241 petitioner attempted to circumvent a statutory direct appeal deadline. *Tyson*, 115 F. App'x at 39. The court reasoned that failure to enforce the exhaustion requirement in such a case "would eviscerate Congress's" intent in passing the statute. *Id.*

In certain circumstances, however, waiver of the exhaustion requirement may be appropriate. *See Lopez v. Barr*, 458 F. Supp. 3d 171, 176 (W.D.N.Y. 20202) ("[C]ourts can excuse a failure to exhaust if the case presents a substantial constitutional question."). When faced with a meritorious immigration-based § 2241 petition, other judges in and outside of this

10

District have waived the requirement that petitioners exhaust. *See, e.g.*, *Molina Ochoa v. Noem*, No. 1:25-CV-00881-JB-LF, 2025 WL 3125846, at *10 (D.N.M. Nov. 7, 2025); *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025). Even the Tenth Circuit has implicitly excused the failure to exhaust in the context of an indefinite detention claim. *See Soberanes*, 388 F.3d at 1308–12 (requiring exhaustion for habeas petitioners appeal of removal order, but not for his *Zadvydas* claim).

Here, it is appropriate for the Court to waive the exhaustion requirement. The federal Respondents argue that Mr. Izbitski should be required to "submit a written request for release to the [Headquarters Post-order Detention Unit] asserting the basis for the alien's belief that there is no significant likelihood of removal in the reasonably foreseeable future."[3] Doc. 30 at 7 ¶ 17. The Tenth Circuit's rationale for imposing an exhaustion requirement to a § 2241 petition does not apply here. Unlike in *Williams*, *Smoake*, and *Tyson*, a legislature has not statutorily delegated adjudication of *Zadvydas* indefinite detention claims to another entity. *See also Soberanes*, 388 F.3d at 1310 ("Challenges to immigration detention are properly brought *directly* through habeas.") (emphasis added). In *Williams*, the Tenth Circuit reasoned that an "agency is in a superior position to investigate the facts." 792 F.2d at 987. That rationale, though, does not apply here because there are no contested facts that would be better "investigate[d]" by an agency. For Mr. Izbitski's petition, at least, the Court's decision would not be aided by an administrative record. The Headquarters Post-order Detention Unit's decision would not be afforded any sort of deference for its determination. Mr. Izbitski's petition purely presents a question of law, which

---

[3] Mr. Izbitski notes that the Headquarters Post-order Detention Unit is "a unit, not an administrative agency." Doc. 31 at 4. That matter is not adequately briefed. So, I do not address it.

11

this Court is best suited to address. Thus, the traditional justifications for requiring a § 2241 petitioner to exhaust do not apply here.

Additionally, requiring Mr. Izbitski to exhaust would unnecessarily waste scarce judicial and legal resources. Due to counsel's difficulties in serving the federal Respondents, Mr. Izbitski's petition has been pending for four months. *See* Docs. 1, 9, 11, 19, 26. It only became ripe for a decision recently after briefing from both sides. Docs. 1, 30–31. Mr. Izbitski has been detained for that entire time. "[T]he federal habeas statute provides for a swift, flexible, and summary determination of [a petitioner's] claim." *Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973) (citing 28 U.S.C. § 2243). Further delaying Mr. Izbitski's meritorious petition by requiring him to exhaust then re-file a habeas petition would be to unreasonably delay, and thus deny, justice.

Accordingly, I recommend that the Court excuse Mr. Izbitski from exhausting his *Zadvydas* claim.

### C. The Court should decline to address Mr. Izbitski's outstanding request for relief.

I recommend that the Court decline to address Mr. Izbitski's outstanding requests for relief.

Mr. Izbitski argues that Respondents violated the APA when the Department of Homeland Security "deviated from its own policies in detaining Petitioner without having established a significant likelihood of removal in the reasonably foreseeable future." Doc. 1 at 8 ¶ 30. He requests habeas relief based on this violation. *Id.* ¶ 31. Based on my recommendation that the Court grant his habeas petition, his request for habeas relief based on this APA claim is moot. I therefore do not address the merits of the other issues presented by the petition. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no

power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.").

Mr. Izbitski also requests that the Court, "[r]estrain any further detention of Petitioner or restrictions on Petitioner's liberties including 'alternatives to detention' such as, but not limited to, GPS monitoring or geographic limitations." Doc. 1 at 9. Mr. Izbitski does not supply any argument to support this request in his § 2241 petition or his accompanying memorandum of law. *See* FED. R. CIV. P. 7(b)(1)(B) ("A request for a court order must . . . state with particularity the grounds for seeking the order."); *see also* Rule 2(c)(2), Rules Governing Section 2254 Cases ("The petition must . . . state the facts supporting each ground."). Therefore, I recommend that the Court decline to address the matter because it has not been adequately put before the Court. *See In re Kelley*, 703 F. App'x 668, 674 (10th Cir. 2017) (declining to address request for relief because it was inadequately briefed).

### IV.     Recommendation

I recommend that the Court find that Mr. Izbitski's Fifth Amendment rights are being violated by his indefinite detention. *Supra* § III(A). I further recommend that the Court waive the exhaustion requirement for Mr. Izbitski's indefinite detention claim. *Supra* § III(B). I also recommend that the Court decline to address his outstanding requests for relief. *Supra* § III(C).

Based on these recommended findings, I recommend that the Court GRANT Petitioner Sergei Izbitski's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1). I recommend the Court order Mr. Izbitski's immediate release and restore the Order of Supervision under the same terms as were in place before June 9, 2025.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With*

***Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge